The next case this morning is number 521-0394, Midwest Neurosurgeons, LLC v. Abell. Arguing for the appellant, Midwest Neurosurgeons, LLC, is Sean Broker. Arguing for the appellee, Mary Ellen Abell, is Nicholas Camarado. Each side will have 15 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Okay, I don't see Mr. Camarado. That's correct, yes. Okay, you may begin when you are ready, sir. May it please the court and good morning. Your honors, the question we are faced with today is whether the trial court erred in dismissing my client's breach of contract action for failure to state a claim. The contract that appellant sued under was a settlement contract entered into between the appellee and her former employer, excuse me, former employee, Ms. Cheryl Lyle, to settle a worker's compensation claim stemming from a work-related accident. The settlement contract states that appellee agrees to, quote, pay directly to the providers. Ms. Lyle's costly related medical expenses incurred up to 9-26-2012. As alleged in the complaint in paragraph 12, appellant was one of those providers that appellee was supposed to pay. Because this language makes appellant a third-party beneficiary to the settlement contract and appellee failed to pay the expenses agreed to pay under that settlement contract, we were forced to file this lawsuit. Now, appellee doesn't argue that appellant did not plead the elements of a third-party breach of contract. To be sure, this is a recognized claim under Illinois law. In fact, two cases that we've cited come from the fifth district, and that's Hustonville Community versus Illinois High School Association and Hacker versus Shelter Insurance, both showing that a third-party beneficiary breach of contract claim is valid and recognized. So if this claim is recognized under law and appellants plead the necessary elements, why did the trial court here dismiss our claim? Well, when you read the orders, your honors, the trial court really suggests maybe two reasons. First, the trial court held that appellant asked this court to create a cause of action where none currently exists. As I just mentioned, that's not true based on the two cases that are decided from your district. And second, the trial court states that appellant, quote, asked that a medical provider who is not expressly named in a settlement contract should be a third-party beneficiary and have the power directly to sue an employer. So let's break that down there a bit. To recover as a third-party beneficiary, does a medical provider have to be expressly named in that contract? And the answer is no. Under Illinois law, a party can be a beneficiary to a contract if two circumstances exist. First, if they are expressly named in the contract, as the trial court suggested. And second, if the party falls within a class of individuals that the contract was intended to benefit. And that line of language comes from many different Illinois courts, but the two that both sides sort of cite to and agrees are the Marquise Medicos Fullerton and Marquise Medicos Farnsworth. Now, of course, we agree that the appellant here, Midwesterner, was not specifically or expressly identified in the contracts. We're not relying on that mechanism to make them a third-party beneficiary. Instead, we're arguing that they are of the class of individuals that the contract intended to benefit. And that's based strictly on the allegations in our complaint. As you know, the trial court is supposed to take those allegations as true. On a motion to dismiss is why we're here. And we've alleged again in paragraph 12 that we were intending third-party beneficiaries of this settlement contract. So in my mind, the problem that with the trial court's order where Judge Goffnett states that appellant asked a medical provider who is not expressly named in the settlement contract. To me, this is just the only considered the first mechanism to make them a third-party beneficiary and not the second mechanism, which is whether or not they're in that class of individuals that the contract intended to benefit. Appellee argues dismissal was proper here because appellant is actually seeking to enforce a final award of the Workers' Compensation Commission and final awards can only be enforced pursuant to 820 ILCS 305-19G. I'll just refer that to 19G for the remainder of my arguments this morning. And 19G, appellee argues does not allow a medical provider to collect from a medical or from the employer so appellant's claims fail. So what is 19G? Well, the Workers' Compensation Commission doesn't have authority to enforce its own awards. So when an employer fails or refuses to make good on the final award, section 19G provides a statutory remedy for the employee to take the final award to the trial court or the circuit court, have that entered as a judgment so they can go out and collect on that final award. That's the first purpose of 19G. And the second purpose of 19G is to compensate an employee when an employer fails to make payment in the form of court costs and attorney's fees and things of that nature. So 19G, there's no language in 19G that explicitly or expressly prohibits a medical provider from collecting under a settlement contract in a Workers' Compensation Commission. There's no language in that. There's no case law supporting that position. So we believe for that reason, the trial court erred in making its decision. Now, the appellee here really relies on three cases. And these are the Marquis Medicos lines of cases to support their positions. These sort of triumvirate of cases came out from the first district back in 2018. And those are the Marquis Medicos Archer, Fullerton, and Farnsworth. We discussed these at length in our brief, so I don't wanna rehash everything about them. Most of us discussed them. So that is all in front of the court. But I would like to make a couple of points about them. And first, I'll just Fullerton and Farnsworth together because these cases are fairly factually similar to one another. In both, the medical providers filed a breach of contract claim against an employer's insurer as an alleged third-party beneficiary to an insurance policy. Neither of these cases involved a claim brought pursuant or to recover under a settlement contract. And this court's likely aware insurance contracts are treated completely different in a whole host of circumstances, including the circumstances here in Farnsworth and Fullerton sort of address those issues that insurance contracts present or raise. But in both these two cases, the first district affirmed dismissal of the claims because the medical providers failed to allege, they failed to allege that they were intended third-party beneficiaries to these insurance contracts. Here, we have no pleading failure. I don't think the court at any point in its order indicated or at the hearing, there's any argument that we didn't at least plead we were pleading failure. The argument is that these claims fail for another reason. The other case was Archer. In Archer, after an employee and employer settled a worker's comp claim, the medical providers filed a lawsuit against the employer and its insurer asserting several claims, including breach of contract. The contract there provided language somewhat similar to what we have here. And it is quote, respondent will pay all necessary or related medical expenses pursuant to the fee schedule. That's the Illinois fee schedule. So that's fairly similar language to what we're dealing with in this case. And on appeal, the appellate court stated, and this comes from paragraph 14 of Archer. So I do wanna read this paragraph. I do think it's important to put this in context and it does present an issue from my friends on the other side here. And it's quote, turning first to the breach of contract theory, the providers allege that they are intended third-party beneficiaries of the settlement agreement and that the insurer and employer's failure to pay them amount do amount to a breach of that settlement agreement. And the appellate court went on to further state, and quote, the trial court agreed that the providers are third-party beneficiaries of the agreement and found that the complaint stated positive action against the employer, but not, but dismissed account against the insurer based on its finding that the latter is not a party to the settlement. So here we are, the appellate is the employer, the trial court, at least in order to recognize that this is a valid claim. What happened after this appeal, I'm not sure, we've tried to look through the record and figure out where this case went, what the procedural posture was, but we couldn't locate that history. This case is sort of similar to a case, and we raised this in our brief, a case I had in Jackson County, Illinois, that's Midwest Neurosurgeon versus City of Murfreesboro, which we've cited and attached to the record where the trial court rejected an argument similar to what Mr. Camerata, excuse me, the appellate is making here today. Last year, maybe that was two years ago, the trial court just denied their motion to dismiss on the same grounds that the trial court here granted. So we do have a little conflict at the trial court level. Obviously, those are just persuasive authority at the trial court level, and then don't, may not have a whole lot of influence at the appellate court level, but at least I just want to raise those for the court's attention of the issues that medical providers are facing in Illinois and trying to collect under these workers' compensations, settlement agreements. And nothing in the Marquis Medicos line of cases support the conclusion that the appellant did not support a claim here. This wasn't ever an issue. And at most, Archer sort of at least goes our direction in making it clear that this is a valid claim. And finally, on a policy- Yes. Mr. Broker, let me ask you a question since you're on these cases. In the Fullerton case, the court says that it's your burden, your client's burden, to show that they intentionally entered into the standard contract for the direct and not merely incidental benefit of plaintiffs. And in this particular case, in the settlement agreement, it says, respondent also agrees to pay directly to the provider the unpaid medical expenses incurred prior to the date of settlement at Urology of Southern Illinois Limited. So there's a specific provider mentioned on the last page. I'm looking at E12, the record. But your client is not mentioned. So how do you plead and prove a direct intention to benefit your client? That's a great question, Justice Case. I think that goes back to the second mechanism that's what creates a third-party beneficiary on Illinois. Do we fall in that class of individuals that the contract intended to benefit? And of course, we make that allegation in our complaint. So at a minimum, that should be taken as true. But I think if you look at the language you pointed to, it says, respondent also agrees to pay directly to the provider. They discuss one provider. And the sentence before that is a sentence what we're really relying upon. And that states that a pallet agrees to pay directly to the providers, the costly related medical expenses up to 9-26-2012. So I think the general statement that they agree to pay directly to providers is enough to show that we are intended to be in that class of individuals. But I think the fact that the respondent also agrees to pay, which comes right after that is further evidence that this sentence prior to that is different, right? So the Dr. Lori Guyton, I'm not sure if I'm pronouncing her name correctly, is an individual specifically identified. And there's also a class of individuals identified in that prior sentence or created from that sentence prior to that. Isn't there also in the settlement agreement a place where you can list the providers that are owed the money? I would have to go back and look at this one. I have several of these. I can't recall off the top of my head. And you do see that sometimes, Your Honor, that there will be a page at the end of tax exhibits. There'll be 30 or 40 individuals that are expressly identified, making them third-party beneficiaries of the contract. We don't have that in this situation. But again, I think at a minimum, we have made the allegation in our complaint. I think there's enough in the contract to show they were intended third-party beneficiaries. And we should at least get to do fact discovery on who the appellee intended to benefit down the road. So your argument simply is that with regard to the language, even if your client's not named on that list, since no list was provided in this particular workers' comp case, just the boilerplate language, if you will, medical providers that incurred causally related medical expenses up to September 26, 2012, by mere fact that your client provided medical services and incurred expenses up to and before September 26, 2012, that's enough to name them, to enable them to bring a third-party beneficiary case. Yes, it is. Yes, it is, Justice. And again, it goes back to, do they fall within that class of individuals that the contract intended to benefit? And we believe that line clearly makes it so. The last thing, I know my time is running short here. See if I could get my notes together real quick. I do want to bring up the policy issue. I'd be remiss if I didn't bring up the potential consequences of this court going against us in this situation. There are likely thousands and thousands of individuals or employees in this state that have settled workers' comp claims, whereby the employee agreed to release those claims if their employer paid their medical bills. If this court agreed with the appellee, what happens to those thousands and thousands of employees? Do they get their medical bills provided? Are those settlement contracts void now that their contract lights away that they can't contract away, at least in appellee's positions? If these contracts are invalid or void, did the employee actually receive the benefit of their bargain here? The purpose of the Illinois Workers' Comp Act is to provide protection to employees by providing a prompt and equitable compensation for their injuries. And that's the Illinois Supreme Court stating that in Kelsey v. Motorola. And we don't believe, as my friend suggests, at the trial court, that appellant should sue Ms. Lyle for failing to pay her medical bills and then collect on that judgment. And then Ms. Lyle can turn around and sue appellee for breach of contract. Now, is that really what the Illinois legislature intended when enacting 19G? And we would say no. Thank you. Okay, thank you, Mr. O'Reilly. Justice Welch, do you have any questions? No questions. Justice Barberi? I do have one follow-up question. And that was, there was quite a bit of time elapsed between the settlement and the bringing this action. Is there an explanation for that? No explanation, Justice. The settlement contract, the services were provided in 2011. The settlement contract was provided in 2013. I think this is one that just slipped under the radar. We have a 10-year statute of limitations on this. So we're within the statute of limitations, but I think, honestly, it just slipped under the radar, to be fair. So in your position, obviously, there's no consequence to the fact that it's taken this long to bring the action, since it was under the statute of limitations. It doesn't matter if it was brought in 2014 or if it was brought in 2020, 2021. That would, as long as it's before the 2023 or 10 years after the contract was signed, we don't believe there's a legal issue with that, no. Okay, thank you. Thank you. Okay, thank you, Mr. Broecker. Mr. Camerata. May it please the court. Good morning. As you know, I represent Ms. Abel, who is the employer in this matter. And I don't believe I will take all my time, but I just wanted to highlight that I agree with what Justice Cates, that you pointed out, that one of the remedies here that is specifically suggested by the Medicos line of cases is that in the future, the agreements that are entered into in workers' compensation specifically identify the parties and what they're owed, so we don't face this issue in the future. So I believe that is ultimately for future cases where the parties in workers' compensation cases should turn and they should specifically identify the amounts of the bills owed and how those are calculated under workers' compensation and the fee schedule, so that we don't run into this issue in the future. This is- Let me stop you for just one second. In regards to that line of thought, does your client deny knowing that appellants were owed money at the time of the settlement? Or are they denying that they had any idea that who they owed money to in regard to this particular provider? Well, that is a very good point. And the briefing of appellant seems to suggest and implies that my client is avoiding her obligations under the workers' compensation settlement. And I don't believe that's true, because as you can see by the Exhibit A to the complaint, that it sets forth a spreadsheet containing the billing and what has been paid, and they have been paid. These bills have been paid. And before this lawsuit was filed, the insurer went back and calculated to make sure that the payments were correct pursuant to the fee schedule, and they were calculated correctly. So it is our position, if this goes back, that it was done correctly. And they just are looking for more funds here. Okay, so in other words, your client is not denying that Midwest Neurosurgeons was a provider and was owed money. And in fact, your client's position would be that they were paid what was owed. Correct. So then what are Midwest Neurosurgeons trying to collect if they've been paid what was owed? I believe they have a dispute regarding how the fee schedule under workers' compensation would have applied to the bills here. It's my understanding that the billing was somewhat complicated due to some out-of-state treatment and various other things that were involved in that calculation. So it wasn't a straightforward calculation, and they believe that their calculation is correct. We went back and verified that, and it appears that our calculation was correct. There was an attempt before this lawsuit was filed to work that out, and that was unsuccessful. So we're here in court. So I guess I'm a little curious, if your client has previously paid Midwest Neurosurgeons, and this is less to do with are they owed anything, do they have the right to collect anything under this settlement agreement? It seems like that's a waypoint if, in fact, they've been paid already under that settlement agreement. And isn't that an acknowledgement that they have a right to collect under the settlement agreement? And if so, wouldn't you agree that it seems pretty fact-based? Shouldn't you be allowed to make your argument? Shouldn't they be allowed to make the argument more is owed, and you explain to the circuit court why it's not? Well, and that is a good point, and that comes back to the ultimate issue here is that we aren't looking at a settlement contract. We are looking at and are faced with a final award from the Workers' Compensation Commission. And I believe that issue is dispositive here as to the points, and that was the reasoning behind the trial court's ruling here is ultimately we have a final award of the Workers' Compensation Commission. Once that settlement contract was approved, and we know that settlement contracts don't have to be approved by the commission, they can work outside of the act, but once that document was approved by the commission, it became for legal purposes a final award of the commission. We're no longer dealing with a contract. Contract law doesn't apply. The Workers' Compensation Act applies. We are now within the scope of the Workers' Compensation Act and the statutory provisions of that act now apply. Under section 19G, that provides for the enforcement of a final award of the commission. And appellants readily admit in their briefing, they say in their reply brief at page four, quote, moreover, the only way to enforce a final award of the commission is in circuit court pursuant to section 19G of the Illinois Workers' Compensation Act. I have not seen or found, and appellant does not cite to any authority that suggests that the Illinois, the general provisions in Illinois law that say that a final award or a settlement contract approved by the commission becomes a final award. That is well-settled law. There's nothing disputing that. So what we have here is not a simple settlement contract. We have a final award of the commission. Now, despite this clear authority, and despite the fact that Midwest Neurosurgeon in fact seeks relief under the Workers' Compensation Act, they continue to try and characterize this as a simple contract claim. But we can see in their reply brief on page six, they admit that this is the applicable authority. They say, quote, ABLE would be correct only if Midwest Neurosurgeons brought a section 8.2D claim, which isn't the case. However, but then they go on in their briefing to continue to characterize the claim as solely one for breach of contract. But if we look at their petition, their complaint seeks relief under 8.2. In paragraph 21 of their complaint, they seek interest at the rate of 1% per month that began to accrue as set forth in 820 Illinois statute 305 slash 8.2. So again, we are within the scope of the Workers' Compensation Act, regardless of the relief sought, because once that contract was approved, it became a final word of the commission and was subject to the Workers' Compensation Act and the laws that are applicable. But the fact that they invoke the Workers' Compensation statute in their pleadings makes it clear this claim is subject to workers' compensation, and it's not just a breach of contract claim. Now, as I mentioned, they don't cite to any authority to dispute the principle that the commission's approval of a settlement contract between the parties in workers' compensation becomes a final award. And again, as the Medicos cases were fully briefed by the parties, and are there some distinguishing facts? Yes, but there's no mistaking the reasoning behind the Medicos cases, which boils down to once the commission approved a settlement, it became a final award of the commission and was subject to the Workers' Compensation Act. The remedy here lies within the Workers' Compensation Act and any factual distinctions in the Medicos cases don't change that conclusion. Those cases recite in detail the proper method for enforcement here, which does not include a medical provider filing a breach of contract claim against an employer to dispute the amount paid under the fee schedule. Now- But those cases, Mr. Camarata, those cases do discuss the third-party beneficiary aspect of the claims. Correct. And in all three of those cases, the third-party beneficiary aspect is focused upon the insurance contract, because in those cases, those involve the insurer as well. Now, the only case that involves a direct cause of action, a breach of contract claim from the medical provider against the employer was Archer. And that specific claim was dismissed before it went on appeal. So that specific issue, which is our specific issue here, was not addressed. However, if you go and read the latter half of those opinions, they are consistent and the court goes over and emphasizes the proper method for enforcement here, which they recognize that it was an enforcement action by the, those remedies lie with the employee. And those cases emphasize and recognize that that relief may be, you know, circuitous. And they readily identify that and provide suggestions for parties and workers' compensation going forward to remedy that, which we had discussed specifically identifying that. But they ultimately come back to the remedies provided by the act or held by the employee, not by the medical provider. Following the entry of those cases, the legislature did in fact act. The legislature amended 8.2, and those amendments specifically recognized and gave employers or medical providers, excuse me, gave medical providers a limited cause of action to pursue interest when 8.2 was not complied with by either the insurer or their employers. That, those remedies, however, are limited expressly to, for the sole purpose of seeking payment of interest. They could have at that time provided medical providers with a direct cause of action to directly sue an employer or an insurer to try and resolve any fee disputes. But the Illinois legislature chose not to do that. There are remedies in place to address the issues here. The proper remedy, what should have happened is when they received payment initially and received the explanation of benefits as required by section 8.2, they should have gone through the appeal process directly with the insurer at that time and worked out any deficiencies in the calculation of those bills at that time. You know, the Illinois, unfortunately, the statute does not provide for a specific remedy, statutory prescribed to address a specific fee dispute, but it does provide for contacting the Department of Insurance and other remedies. Ultimately, though, when following the Medicos cases, which specifically recognize this issue, the Illinois legislature chose not to provide medical providers with a direct cause of action. They only gave the direct cause of action for the sole purpose of seeking interest when 8.2 is not complied with. Here, however, 8.2 was complied with in the fact that there was payment made and the insurer provided the explanation of benefits as required by 8.2, setting forth how those benefits were adjusted and how the bills were calculated. I believe I've hit on all of the points that I wanted to discuss. Unless the justices have any other questions, I'll complete my argument. Justice Welsh? No questions. Justice Barberos? No, thank you. Okay, Ms. Cameron, thank you for your argument. Mr. Broecker, response? You need to unmute you, Mr. Broecker. That was wrong. There we go. Can you hear me now? Yes, you may proceed. Okay, thank you. I think what we heard from Mr. Cameron at the beginning of his arguments that his clients did make payments to Midwest Neurosurge. If that's the case and if they knew they owed this amount or some amount of money, whatever that amount of money was, we were clearly intent third-party beneficiaries. We've stated the claim, so I think it's pretty clear at this point that at least the trial court erred on that point. And he also mentioned the bills that were supposed to be paid and that there's a dispute on how much is owed. Obviously, we allege in our petition that these amounts are owed and that the full payments were not made and those allegations, of course, have to be taken as true here. So at least we should get to go into fact discovery on those a couple of points. And the final point has to do with 8.2 and that we're trying to seek interest under that. And the reason for that is because in the settlement agreement, it says that the expenses will be paid pursuant to the Illinois medical fee schedule. And we argue that these expenses would include the interest. So I don't think that somehow asking for interest as a remedy, not as a claim under the Illinois workers comp somehow transforms this into something other than a breach of contract action. And that is what we've alleged, that is what we've asserted. And because there's a lack of case law stating that we, as in medical providers, cannot recover for these amounts, I don't think that's dispositive of any fact. It doesn't seem like it's our burden to prove that the Illinois workers comp act does something that just isn't identified in the act itself, and that is 19G. So I think we could go back and look at the two cases that are brought up, the Illinois high school association case and the hacker versus shelter insurance cases stating we were intended third party beneficiaries. We fell within a class of individuals that the appellee agreed to benefit. And we're trying to recover for the cost still owed under that agreement. And that is all I have for you this morning. Okay, Justice Welch. No questions. Justice Burbanks. I don't think so, thank you. Okay, thank you, Mr. Broker. Gentlemen, this matter will be taken under advisement. We will issue an order in due course. We appreciate your arguments today, very interesting case, and we'll be in touch soon.